UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAVJEET SINGH BANGA,

Plaintiff,

v.

CHRIS GUS KANIOS, et al.,

Defendants.

Case No. 16-cv-04270-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Navjeet Singh Banga advances a host of claims related to his attendance at, and dismissal from, John F. Kennedy University ("JFKU") Law School against defendants Chris Gus Kanios, Dean Barbieri, Eleanor Armstrong, Debra Bean, JFKU, and National University (collectively, "defendants"). Banga's claims have already been dismissed twice with leave to amend. Defendants again move for Banga's claims to be dismissed with prejudice. Because Banga's third amended complaint ("TAC") remains deficient in some respects, the motion is granted with respect to claims 4[1], 5, 8, and 9, and denied with respect to claims 1-3, 6, and 7. Because Banga has been given many opportunities to amend, those claims that are dismissed are dismissed without leave to amend.

---

[1] This Court's prior order made clear that any amended complaint will be limited to addressing the deficiencies identified in this order. As such, Banga's newly added claim for "violation of fundamental right to privacy" will be disregarded, as it was not raised in any of the previous iterations of his complaint.

## II. BACKGROUND[2]

In the summer of 2015, Banga began considering applying to JFKU Law School. Before applying, he attended an open house event where he was given a College of Law Student Handbook and an application for fee waiver. In July 2015, a JFKU enrollment counselor explained to Banga the school's ADA compliance practices and accommodations for disabled students. Based on these assurances, Banga applied to JFKU Law School. The next month, the school offered Banga admission, which he accepted. At the school's orientation that month, Banga received from the school's Office of Accessibility Services[3] ("OAS") handouts regarding the school's equal access and disability accommodation policies.

In October 2015, Banga registered for ADA accommodations with OAS; he provided the school medical documentation of his diagnoses of depression and anxiety, along with a request for extended test time. In return, OAS issued an "accommodation letter" providing him with double time for tests, along with other accommodations.[4] The second page of the accommodation letter advised that students who believe they have been denied accommodation or that the accommodation afforded is insufficient, may appeal to the Disability Services Committee. Banga compared his accommodation letter to that of another student, and learned his did not contain the statement: "All Exams/Quizs will be administered . . . in a less distracted area." TAC ¶ 24. Banga inquired with OAS as to whether he would be provided as "quiet/non-distracting room," and was told by OAS coordinator Doreen Alfaro that he would.

In November 2015, Banga requested from OAS a quiet room for his torts practice exam.

---

[2] The facts are drawn from Banga's TAC and taken as true for the purposes of deciding this motion.

[3] Banga states that the Office of Accessibility Services was originally called the Office of Disability Services. Accordingly, the names are used interchangeably.

[4] Defendants' motion to dismiss includes as an attachment the disability accommodation letter JFKU issued to Banga. Defendants move to seal the letter because it contains private health information. (Dkt. No. 97). That motion to seal is granted. *See Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (information "traditionally kept secret" is subject to seal); Civ. Local R. 79-5(b).

He was provided with room S308, where he was apparently distracted and interrupted by other students entering the room and watching him through the window. After the practice exam, he complained to Alfaro that he could not concentrate in room S308. Later, during midterms, Banga was assigned room S313A. The room was apparently noisy due to its proximity to a waiting room and reception area. During the examination session, Banga complained and asked for a quieter room, but his request was denied. Banga was again instructed to use S313A during exams in May 2016. As a result of using a distracting exam room, and the stress of asking for and being denied help, Banga claims his torts and contracts grades did not accurately represent his ability.

In June 2016, Banga notified Debra Bean, the president of JFKU, and Dean Barbieri, the dean of JFKU Law School, that his exams were impacted by the school's failure to accommodate his disability, and that professor Chris Kanios had graded his torts exam unfairly as a result of race, color, religion, or disability discrimination. Banga's suspicion Kanios had graded his exam unfairly stemmed from the fact that Banga believed his exam was similar to the model answers Kanios posted, and the fact that Kanios had apparently been accused of racial discrimination in the past.

On June 20, 2016, Banga received a notice of disqualification. Four days later, he filed a petition for advancement on probation, arguing his grades were adversely impacted by the school's failure to accommodate him, and by Kanios' unfair grading. On July 2, 2016, Banga was notified of his dismissal from JFKU Law School. He attributes this dismissal to his poor grades, which resulted from using a distracting exam room. On July 26, Banga attempted to hand-deliver a letter to Bean, inquiring as to why his petition for advancement and an ADA complaint he apparently lodged had not been answered. After an hour of waiting for Bean, Banga explained to Bean's assistant Marie Pavone that he intended to file a lawsuit against JFKU for failure to provide him reasonable accommodation. Upon hearing this, Pavone allegedly threatened to have Banga escorted out of Bean's office area. On July 28, Banga filed this lawsuit.

Upon defendants filing a first motion to dismiss, Banga filed a first amended complaint on October 14, 2016. Defendants again filed a motion to dismiss, which was granted with leave to

1  amend on January 12, 2017. Thereafter, Banga filed a SAC, which was again granted with leave
2  to amend on May 11, 2017. Now Banga has filed a TAC, which names JFKU, National
3  University, Bean, Barbieri, Kanios, and JFKU OAS director Eleanor Armstrong as defendants,
4  and advances claims for: disability discrimination in violation of the Americans With Disabilities
5  Act ("ADA") and Rehabilitation Act; retaliation in violation of the ADA and Rehabilitation Act;
6  disability discrimination in violation of the Unruh Civil Rights Act; violations of California's
7  Unfair Competition Law ("UCL"); breach of contract; intentional misrepresentation/fraud; and
8  intentional infliction of emotional distress. Defendants now move to dismiss the TAC with
9  prejudice.[5]

### III. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotation marks omitted). Federal Rule of Civil Procedure 9(b), meanwhile, requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include

---

[5] Both parties have introduced Banga's accommodation letter, and move to have it sealed. Banga has also introduced, and moves to seal, other medical documents and enrollment documents, and medical documents and an accommodation letter belonging to another student. The motions to seal are granted. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (information "traditionally kept secret" is subject to seal); Civ. Local R. 79-5(b). Meanwhile, Banga has also moved to strike portions of defendants' reply and for leave to file a sur-reply brief. Because the Court has concluded that defendants' reply arguments are not improperly made, the motions are denied.

sufficient facts to support a plausible claim under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. Legal conclusions, however, need not be accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id* . When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. Discrimination Claims

Banga's first claim alleges all defendants discriminated against him on the basis of his disability in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title III of the ADA, 42 U.S.C. § 12182.[6] To state a claim for discrimination under the Rehabilitation Act or the ADA, a plaintiff must allege: (1) he is disabled; (2) he is qualified to remain a student at the institution; (3) the institution took adverse education action against the plaintiff because of his disability; and (4) the institution receives federal financial assistance (for the Rehabilitation Act claim) or is a public entity (for the ADA). *See Zukle*, 166 F.3d 1041, 1045 (9th Cir. 1999). A disabled person is otherwise qualified to participate in a program if he shows he can meet the program's necessary requirements with reasonable accommodation. *Id.* at 1046 (citation omitted). An ADA plaintiff must show "the existence of a reasonable accommodation that would enable [him] to meet the educational institution's essential eligibility requirements." *Id.* at 1047.

In the TAC, Banga alleges defendants discriminated against him on the basis of his alleged

---

[6] As the first order of dismissal held, Kanios, Barbieri, Armstrong, and Bean can be held individually liable for violations of the ADA. *See Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004).

ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS
CASE NO. 16-cv-04270-RS

5

disability — major depression and severe anxiety disorder — by failing to provide him with a noise-free exam room, "failing to engage in mandatory interactive process" and "failed to make reasonable accommodation . . . when such accommodation would not have imposed an undue hardship on its operations." TAC ¶ 79-80. Essentially, the SAC alleges a failure to accommodate causing Banga to perform poorly on his exams and ultimately face dismissal due to poor performance. Such a claim is subject to the following burden-shifting framework:

> [T]he plaintiff-student bears the initial burden of producing evidence that she is otherwise qualified. This burden includes the burden of producing evidence of the existence of a reasonable accommodation that would enable her to meet the educational institution's essential eligibility requirements. The burden then shifts to the educational institution to produce evidence that the requested accommodation would require a fundamental or substantial modification of its program or standards. The school may also meet its burden by producing evidence that the requested accommodations, regardless of whether they are reasonable, would not enable the student to meet its academic standards. However, the plaintiff-student retains the ultimate burden of persuading the court that she is otherwise qualified.

*Zukle*, 166 F.3d at 1047.

As an initial matter, defendants argue that the TAC does not allege that Banga is disabled within the meaning of the ADA. On the contrary, Banga asserts that in 2006, he was diagnosed with major depression and generalized anxiety disorder. According to Banga, these conditions "substantially limited and continues to limit [his] major life activities such as thinking, concentrating, interacting with others, and sleeping as compared to the way in which the average person thinks, concentrates, and interacts with others." TAC ¶ 17. He also alleges, and JFKU does not dispute, that he provided documentation of his diagnoses to the university, which responded by issuing him an accommodation letter providing for double testing time and other adjustments. Banga claims that he alerted Alfaro that he "had difficulty concentrating for sustained periods of time and was very sensitive to noise as it caused him a great deal of anxiety." TAC ¶ 25. Banga allegedly asked Alfaro if he needed to provide additional documentation to support his request to be placed in a distraction-free room for his exams, but was told that it would be unnecessary as distraction free rooms would be provided per OAS policy. TAC ¶ 25. Banga also alerted Alfaro

that the room he was initially placed in to take a practice exam, room S308, was disruptive because students came in and out of it, causing him to become very anxious and unable to concentrate. TAC ¶¶ 27-28. Taken together, the averments in the TAC show that JFKU was on notice that Banga required a quiet room for testing and assured him that the accommodation would be provided.

Banga's prior operative complaint was dismissed for, among other things, his failure to carry the initial burden of producing evidence that he is otherwise qualified; the SAC made no attempt to show that, with a sufficiently quiet exam room, Banga would have scored high enough on his exams to remain enrolled. Defendants argue that this complaint should be dismissed for the same reason. While the TAC does not contain facts demonstrating that Banga could pass other graded exam courses without his requested accommodation, he explains in his response that the only graded courses he took prior to being dismissed were contracts and torts, which were yearlong courses. The implication is that the only grades Banga ever received were the grades that resulted in his dismissal from JFKU. Moreover, it appears from the TAC that Banga was allegedly denied his requested accommodation during both his fall (December) and spring (May) examinations.

Assuming that Banga's grades were entirely dependent on his performance on his examinations (as is typical of law schools), the TAC explains how the allegedly distracting nature of the examination room he was placed in for his December midterms caused him to "suffer multiple anxiety attacks with significant symptoms including lightheadedness, heart palpitations, and sweating." TAC ¶ 30. Banga further alleges that he lost significant time on his exam attempting to control his symptoms, and that the resulting stress caused him to be unable to complete a large portion of his exam. TAC ¶ 30. Similarly, Banga asserts that when he was placed in the same distracting room for his spring examinations, he suffered similar symptoms, lost time due to multiple attempts to ask for help remedying the situation, and as a consequence was unable to concentrate on and synthesize information needed to complete his examinations. TAC ¶¶ 32-34. At this juncture, Banga has alleged that he could have completed his examinations in a satisfactory

manner (and thus received a passing grade) had he been assigned to a less distracting room, which he identifies as being "on the left side of ODS (S305)." TAC ¶ 32.

Defendants argue that they are not liable under the ADA or the Rehabilitation Act because a private room for test-taking was not provided for in Banga's accommodation letter and because Banga provided no medical documentation to support his request for a distraction-free testing room. Although defendants nonetheless provided Banga a private room for testing, defendants assert that Banga has no claim because he has no right to a private room of his choice and because his request for a different room was denied due to a scheduling issue. These arguments are unavailing. That a distraction-free room was not among the accommodations specified in Banga's accommodation letter does not shield defendants from liability. Banga says he explained his reasons for requesting a quiet room for testing to Alfaro and inquired if he would need to take additional steps to obtain one, given that it was not provided for in his accommodation letter. According to Banga, Alfaro told him it would be unnecessary, as quiet rooms for testing were provided to students who requested one. Contrary to defendants' representations, the documents referred to in their moving papers demonstrate that scheduling was an issue with respect to Banga's November request for a private room but that Alfaro ultimately told Banga he could be accommodated. *See* TAC ¶ 26. There is no evidence that Banga's subsequent requests for a specific room or his requests to change rooms were denied for lack of availability.

On the other hand, Banga's assertion that a distraction-free room is *required* under 28 C.F.R. §§ 36.303(b) is also unsupported by case law and the language of the regulation itself. Section 36.303(b) simply provides a list of potential accommodations that may or may not be warranted, depending on factual circumstances. Banga's reliance on accommodations provided to another "similarly disabled peer in his class," TAC ¶ 35, is also unpersuasive, given that the reasonableness of any given accommodation is assessed with respect to the particular circumstances of the individual requesting the accommodation. That being said, Banga alleges that he made it known to JFKU that the testing rooms being provided to him were inadequate for his needs and gave specific reasons supporting his request for quieter rooms. Under the facts as

alleged in the TAC, Banga has demonstrated that a reasonable accommodation existed that could have allowed him to pass his graded exam classes and remain enrolled at JFKU.

**B. Retaliation Claims**

Banga also alleges defendants retaliated against him by: (1) dismissing him from the University because he filed an ADA violations complaint against them; (2) giving him a lower grade in torts[7] because he submitted a negative course evaluation complaining of inadequate disability accommodations, (3) failing to meet with him regarding his petition for a grade change; and (4) threatening to escort him from the premises when he attempted to hand deliver a letter to President Bean regarding his disability complaints.

Section 12203(b) of the ADA prohibits retaliatory threats against an individual for exercising his rights under the act. The Ninth Circuit borrows its standard for retaliation under the ADA from Title VII of the Civil Rights Act. *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (citations omitted). To state a claim for retaliation under the ADA, a plaintiff must allege "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Id.* (citation and internal quotations marks omitted); *see also Cornette v. Donahoe*, 472 F. App'x 482, 483 (9th Cir. 2012) (apply the same rules for a retaliation claim brought under the Rehabilitation Act). The causal link between the protected activity and the adverse action must be "proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Three out of Banga's four theories of retaliation are not supported by plausible allegations in the TAC. As to the first, Banga does not allege any facts indicating he was dismissed for making an ADA complaint. Like the previous iterations of Banga's complaint, the TAC alleges he was dismissed for poor academic performance (which he attributes to being unable to use a quiet exam room). As to the second, Banga appears to suggest that Kanios retaliated against him

---

[7] This claim appears to pertain only to Kanios as an individual.

by lowering his grade after reading Banga's negative course evaluation, which included criticism of JFKU's disability accommodations. The TAC, however, directly contradicts this theory by including the text of Kanios's email requesting students fill out course evaluations, which clearly indicates that professors are unable to view evaluations of their own courses until after they submitted their grades. TAC ¶ 61. Moreover, Banga's allegations regarding the similarity between his exam answers and the model exam answers, and Kanios's purported history of race discrimination, are not probative of whether the professor retaliated against Banga for engaging in ADA protected activity. Accordingly, Banga fails to allege a causal link between his submission of the negative course evaluation and the grade he received in Kanios's class. Banga's third theory of retaliation fails for similar reasons; the TAC fails to allege a causal connection between Banga's complaint of discrimination as to Barbieri and Barbieri's failure to meet with Banga regarding his petition for a grade change.

As to the fourth, Banga alleges Pavone "threatened [him] to leave the office immediately" or be escorted off campus after Banga informed her that he intended to file a lawsuit against JFKU for failure to provide him reasonable accommodation. TAC ¶ 65. This allegation is sufficient to make the requisite causal link between the purported protected activity (filing a lawsuit regarding denial of disability accommodations) and the purported adverse action (escort from the premises). Based on the sequence of events described by Banga, Pavone appears to have threatened to have Banga escorted away as a response to his informing her that he wished to lodge a complaint against JFKU. Such an action supports a retaliation claim under the ADA.

### C. Unruh Civil Rights Act Claims

Banga similarly alleges defendants discriminated against him on the basis of his disability in violation of California's Unruh Civil Rights Act.[8] *See* Cal. Civ. Code § 51 *et seq.* Like the ADA, the Unruh Act prohibits discrimination by public establishments based on disability. *Id.*

---

[8] Banga also brings a retaliation claim under the Unruh Act, but the Act does not create a separate cause of action for retaliation. Consequently, that claim is dismissed.

§ 51(b). A plaintiff can prove a violation of the Unruh Act by proving a violation of the ADA, intentional or otherwise. *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664-65 (2009). Because Banga states a claim under the ADA, he also states a claim of disability discrimination under the Unruh Civil Rights Act.

### D. UCL Claims

Banga also brings a claim under California's UCL, which prohibits unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq.* His claim relies on defendants' alleged ADA, Rehabilitation Act, and Unruh Civil Rights Act violations. Because Banga's claims under those statutes survive defendants' motion to dismiss, his UCL claim survives as well.

### E. Breach of Contract Claims

Banga advances two breach of contract claims. The first faults JFKU for failing to refund his tuition after dismissing Banga. The second alleges that defendant Barbieri failed to conduct an investigation into Banga's discrimination complaint against Kanios, as provided for in the student handbook.

To assert a claim for breach of contract under California law a plaintiff must show: "(1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App . 4th 1532, 1545 (1998) (citation omitted).

Defendants move to dismiss both of Banga's breach of contract claims for failure to plead language in the Student Handbook indicating that it created an enforceable contract. In California, the basic legal relationship between a student and a private university is generally characterized as contractual in nature. *See Zumbrun v. University of Southern California* 25 Cal. App. 3d 1, 10 (1972). At the same time, courts have recognized that contract law will not be strictly applied in every situation. *See Kashmiri v. Regents of University of California*, 156 Cal. App. 4th 809, 824 (2007). Courts often take a flexible approach with respect to a university's academic or disciplinary decisions, while being more inclined to apply contract theory with respect to a

"specific promise" regarding fees charged or educational services provided. *See id.* at 826.

Banga alleges that at the time he received a notice of dismissal, he was enrolled in Contract Drafting, Electronic Research, and Juvenile Law and had paid a total fee of $5,035. According to Banga, the Student Handbook states that students who are withdrawn from classes will receive a full refund. This amounts to a "specific promise" that can be enforced in accordance with contract principles. Because defendants have purportedly failed to refund Banga's fee, Banga alleges the fee amount, plus interest, as damages flowing from defendants' breach of contract.

Banga's second claim, that defendants breached their alleged duty to investigate his grade complaints, is closer to the type of disciplinary procedure challenge that California courts are reluctant to address using contract theory. That being said, given that Banga has identified specific policies and procedures that he believes defendants violated in the course of responding to his accommodation complaints, at the pleading stage he has plausibly alleged the existence of an implied contract. The TAC claims damages including "lost time pursuing his chosen profession, actual monetary losses, future monetary losses, loss of professional and employment opportunities and other injuries including but not limited to humiliation, frustration, embarrassment, and denial of equal treatment and access." TAC ¶ 128. It is possible to conceive of how the failure to investigate could have ultimately cost Banga employment opportunities, and although he has not plausibly alleged any discrimination by Kanios that could have been revealed by such an investigation, he has alleged disability discrimination that might have been uncovered as a result, *see supra* Part IV.A. Accordingly, the motion to dismiss Banga's breach of contract claims is denied.

**F. Intentional Misrepresentation/Fraud Claim**

Banga next alleges defendants defrauded him because JFKU Law School guaranteed "equal and full accommodation to disabled students," while defendants "knew that JFKU did not have [a] designated Office of Disability Services to ensure that [a] disabled student would receive full and equal accommodations to accommodate his/her disability," "knew that they had no process or procedure to rectify [a] student's complaint regarding inadequate accommodation," "knew that they

had no process or procedure to make an assessment when [a] student believed that his poor performance was caused by inadequate accommodations," and "knew that student[s] had no right to exercise their right to challenge the grade and would be dismissed without a review of his/her petition." TAC ¶¶ 131-132. Under California law, "the elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir. 2013) (citation omitted). Banga fails to allege fraud as required by Federal Rule of Civil Procedure 9 because he does not allege with particularity defendants' intent to defraud, or how defendants knew that any guarantees of "equal and full accommodation" were false. Moreover, several of these allegations are contradicted by allegations elsewhere in the TAC, which indicate that JFKU had an Office of Disability Services,[9] *see* TAC ¶¶ 20-23, and that Banga attempted to use JFKU's policies and procedures for registering his complaints about inadequate accommodations and a grade challenge. In short, Banga alleges that defendants knew that they would not follow their written policies and procedures with respect to his case. Because the TAC contains no facts supporting this allegation, his claim for intentional misrepresentation/fraud is dismissed.

## G. Intentional Infliction of Emotional Distress Claim

Banga's final claim is that defendants' discriminatory conduct and failure to accommodate his disability amounted to intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations and internal quotation marks omitted). A defendant's conduct must be "intended to inflict injury or engaged in with the

---

[9] To the extent that Banga is arguing that JFKU did not have a separate facility housing disability services, he fails to demonstrate how this fact renders defendant's statements about "equal and full accommodation" false.

ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS
CASE NO. 16-cv-04270-RS
13

realization that injury will result." *Id.* Conduct is outrageous when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citations and internal quotation marks omitted). Although he alleges defendants engaged in "reckless, outrageous, wanton, willful and malicious behavior," TAC ¶ 141, the facts recited in the TAC simply do not support his characterization. Even if defendants' "failure to provide Plaintiff with procedural safeguards mandated by statutes" or "reasonable accommodations to Plaintiff when the same accommodations were made available to another disabled student" led Banga to experience "psychological and emotional suffering," these omissions do not constitute extreme and outrageous conduct giving rise to an intentional infliction of emotional distress claim.

## V. CONCLUSION

For the reasons set forth above, the motion to dismiss is denied with respect to claims 1-3, 6, and 7. Claims 4, 5, 8, and 9 are dismissed without leave to amend.[10]

**IT IS SO ORDERED**.

Dated: 12/29/17

_____
RICHARD SEEBORG
United States District Judge

---

[10] Defendants also move to strike paragraphs 68, 69, 92, 99, 106, 113, 121, and 141 pursuant to Federal Rule of Civil Procedure 12(f). Because Rule 12(f) motions are generally disfavored and the challenged paragraphs are not entirely unrelated to Banga's theory of his case, the motion to strike is denied.