UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAVJEET SINGH BANGA,

    Plaintiff,

    v.

CHRIS GUS KANIOS, et al.,

    Defendants.

Case No. 16-cv-04270-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Navjeet Singh Banga was a law student at defendant John F. Kennedy University ("JFKU") for two semesters. During those semesters, he took two letter-graded courses: Torts and Contracts. He failed both classes, resulting in his academic disqualification from JFKU Law at the end of his first year. Alleging his poor academic performance was the result of discrimination on the basis of disability, Banga subsequently sued JFKU, its parent National University, and several of its administrators. Defendants now move for summary judgment on each of Banga's claims. The motion is suitable for disposition without oral argument, and the hearing set for April 2, 2020 is vacated. For the reasons set forth below, the motion is granted in part and denied in part.

## II. BACKGROUND[1]

In Fall 2015, Banga enrolled as a part-time first-year student at JFKU Law. The only two

---

[1] For purposes of summary judgment, facts are interpreted in the light most favorable to the non-moving party. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 811 n.3 (9th Cir. 1999). Facts are undisputed unless noted.

letter-graded courses he enrolled in were Torts and Contracts. Both were year-long courses, graded on the basis of a midterm examination administered in December and a final administered in May. He also enrolled in some credit/no-credit courses. Prior to enrolling at JFKU, Banga had completed an undergraduate degree and was in the process of completing a master's degree. He had not received disability accommodations at either his undergraduate or his master's institution.

In October 2015, Banga visited the Office of Accessibility Services ("OAS") to apply for disability accommodations. He provided documentation from his doctor, who wrote Banga would need extra time to complete exams in light of his disabilities. His doctor did not recommend any other accommodations. JFKU nevertheless granted Banga several accommodations: double time for exams, permission to stand up and walk around during exams, priority registration, and multimedia textbooks. These were documented in an Accommodation Letter, signed by both Banga and OAS representative Doreen Alfaro on November 3, 2015. The Letter states students not satisfied with their granted accommodations should appeal. Banga did not appeal. He says he did, however, compare his letter to another student's. That student's letter provided that their exams would be administered in a "less distraction environment." Banga alleges he subsequently asked Alfaro if he needed to submit anything more to ensure his exams would also be administered in a low-distraction environment, and she responded he did not because *all* OAS-proctored exams are taken in low-distraction environments; Alfaro contends this exchange never occurred. Alfaro acknowledges she did email all OAS students, ahead of their practice midterms, stating she would "set [them] up in a room that would support [their] exam practice."

In November 2015, Banga took his practice midterms in a room within the OAS offices. He does not remember who his proctor was, but Alfaro says she administered all of Banga's exams. He alleges he complained to his proctor the practice exam room was too loud and requested a quieter room for his upcoming midterms in a follow-up email to Alfaro. Alfaro, however, says Banga registered no such complaints. His purported email is not in the record. The record does contain an email from Alfaro to all OAS students, after the practice midterms but before the real ones, asking them to let her know if they would need a particular room for their

exams. Banga did not respond to that email. He did respond to another email from Alfaro, which stated she would be proctoring his midterms, and confirm he would be in attendance.

In December 2015, Banga took his Torts and Contracts midterms in a different room within the OAS offices than the one in which he had taken his practice exams. That closed-door room was private, containing no one besides Banga and the proctor. Defendants explain Banga took his exams in a private room not because he requested or needed privacy, but because his granted accommodations—double time for exams, and the ability to move around during them—meant he could not remain in a room with other students. Banga alleges he again complained about noise to his proctor during the exam and asked to be moved to a quiet room, but was not accommodated; Alfaro says she proctored the exam and Banga registered no such complaint, during or after. Banga failed both midterms.

The following spring, Alfaro emailed the OAS students, reminding them of their upcoming final exams and asking them to let her know if they needed any additional accommodations. On March 8, 2016, Banga responded to Alfaro and asked to take his exams in "one of the rooms toward the left side of the OAS entrance." Banga had not taken his midterms in the left-side rooms; his email did not explain why he wanted to use them. Defendants allege those rooms contain apparatuses needed by some students, for example those with visual and hearing challenges, to take their exams, and thus generally are not available to students like Banga. Alfaro did not respond to Banga's request to use a left-side room, and Banga did not pursue the issue.

In May 2016, Banga took his Torts and Contracts finals in the same OAS room in which he had taken his midterms, i.e. not one of the left-side rooms. He again says he complained to the proctor the room was too loud and asked to move; Alfaro again says he registered no complaints. She acknowledges he did email her immediately after his Torts final to explain his exam software crashed, causing him anxiety and panic. His email does not mention the room being too loud.

On June 11, 2016, JFKU Law released its grades. The same day, Professor Chris Kainos emailed all students reiterating the school's policy that students with a cumulative GPA below 70 would be disqualified. Banga had failed both his finals, and none of his other classes were letter-

graded. He thus had a cumulative GPA of 63. The next day, Banga emailed Dean Barbieri, the Dean of the Law School, to express his "disappointment" with his accommodations, explain his poor academic performance was the result of insufficient accommodations, and state he was considering filing a federal civil rights complaint. Defendants contend this is the first time Banga expressed dissatisfaction with his accommodations. At the time, Barbieri shared the email with JFKU's President Debra Bean and Director of Student Affairs Eleanor Armstrong.

The next day, June 13, Kainos wrote to Banga informing him he had been disqualified. The letter explained the process by which Banga could file a Petition for Advancement on Probation, due June 24. Banga subsequently scheduled a meeting with Barbieri. However, after Barbieri learned what the meeting was about, he redirected Banga to other JFKU administrators whom he said could address Banga's complaints. Banga did not show up to the meeting with those administrators. Instead, on June 23, the day before his petition was due, he emailed Barbieri's office, asking for another meeting. "Otherwise," he said, "I will just drop in tomorrow and wait all day." He also repeated his intent to file a civil rights complaint. He filed his petition the next day, reiterating the allegations of disability discrimination from his emails to Barbieri. "OAS staff ha[s] shown immense empathy and…been accommodating despite their financial and structural limitations," he wrote. However, he blamed JFKU administrators for their "failure to provide reasonable accommodations such as: (a) dedicated space for OAS students which is not within a few feet of non-OAS students' examination classrooms; (b) rooms which are not periodically subjected to noise disturbances; and (c) rooms which are not conducive to climate conditions." His petition was referred to and denied by the Academic Standards Committee. Banga was notified in a letter from Kainos, a Committee member, on June 30.

Banga persisted. On July 11, he filed a Petition for Grade Change in his Torts class, alleging his grade had been the product of discrimination on the basis of disability and race by Kainos, his Torts professor. However, the lengthy petition did not elaborate upon this alleged discrimination; it instead identified similarities between Banga's answers and the models which Kainos had distributed. Barbieri did not believe an investigation was necessary given JFKU Law

exams are graded anonymously. He nevertheless referred the petition to the Academic Standards Committee, from which Kainos voluntarily recused himself. The Committee denied the grade change petition; Banga was notified on August 3, 2016. Banga subsequently withdrew from the credit/no-credit summer courses in which he was enrolled and in which JFKU had allowed him to continue while his petitions were pending. The parties dispute whether Banga's summer tuition was refunded.

Meanwhile, on July 26, while his second petition was pending, Banga visited Bean's office and attempted to hand deliver a copy of his civil rights complaint. He waited for about an hour. After Bean's staff threatened to call campus security, Banga left. Two days later, he filed the complaint in the present case. The complaint, in its present form, accuses JFKU, National University, Kainos, Barbieri, Armstrong, and Bean of: (1) discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and California's Uhruh Civil Rights Act; (2) retaliation in violation of the ADA; (3) unfair business practices; and (4) breach of contract.

### III. LEGAL STANDARD

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is therefore proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. In contrast, on an issue for which the opposing party will

have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Only disputes over material facts matter. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The court must draw all justifiable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Id.* at 255. However, the court need not adopt facts "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). It is also not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

As a threshold matter, the parties debate what evidence should be considered in deciding the present motion. Defendants contend Banga's exhibits should not be considered because they were filed after the deadline.[2] However, how missed deadlines should be enforced is within the court's discretion to decide. Given the volume of exhibits filed by defendants in support of their summary judgment motion—nearly 1,000 pages—and Banga's status as a pro se litigant, as well as that Banga's exhibits were only one day late, they will be considered, and the summary judgment motion decided on its merits.

Defendants further contend that Banga's declaration should not be considered because it is, necessarily, self-serving. The Federal Rules of Civil Procedure explicitly allow for declarations to

---

[2] Banga contests this in a surreply, which was filed without first seeking leave to do so. The surreply will therefore not be considered. In addition, Banga is cautioned that his repeated requests for extensions and flouting of deadlines will not be tolerated going forward.

ORDER
CASE NO. 16-cv-04270-RS

6

be considered in deciding summary judgment motions. Fed. R. Civ. P. 56(c)(4). As the Ninth Circuit has noted, "declarations oftentimes will be self-serving—and properly so, because otherwise there would be no point in a party submitting them." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (internal alterations, citation, and quotations omitted). "In most cases, consequently, that an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *Id.* "Only in certain instances—such as when a declaration states only conclusions, and not such facts as would be admissible in evidence—can a court disregard a self-serving declaration for purposes of summary judgment." *Id.* The facts presented by Banga's declaration will therefore be considered for purposes of this motion; conclusions, and other statements which would otherwise be inadmissible, will not. The declaration's credibility will be left to a trier of fact.

**A. Disability Discrimination**

Banga's first claim alleges defendants discriminated against him on the basis of disability in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title III of the ADA, 42 U.S.C. § 12182. To state a claim for discrimination under the Rehabilitation Act or the ADA, a plaintiff must allege: (1) he is disabled; (2) he is qualified to remain a student at the institution; (3) the institution took adverse education action against him because of his disability; and (4) the institution receives federal financial assistance (Rehabilitation Act) or is a public entity (ADA). See *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). A disabled person is otherwise qualified to participate in a program if he shows he can meet the program's necessary requirements with reasonable accommodation. *Id.* at 1046 (internal citation omitted). Qualification, or lack thereof, is subject to a burden-shifting framework:

> [T]he plaintiff-student bears the initial burden of producing evidence that she is otherwise qualified. This burden includes…producing evidence of the existence of a reasonable accommodation that would enable her to meet the educational institution's essential eligibility requirements. The burden then shifts to the educational institution to produce evidence that the requested accommodation would require a fundamental or substantial modification of its program or standards… [or] that the requested accommodations, regardless of whether they are reasonable, would not enable the student to meet its

academic standards.

*Id.* at 1047.

The parties in the present case dispute whether Banga was qualified to remain a student at JFKU Law, with or without reasonable accommodations. Banga bears the initial burden of producing evidence of a reasonable accommodation that would enable him to meet JFKU's eligibility requirements. He contends taking his midterm and final examinations in a quiet, private room would have allowed him to meet JFKU's standards. Defendants argue (1) Banga never requested this accommodation, relieving them of their responsibility to provide it, (2) Banga's proposal is unreasonable, as he was already provided a private room, and (3) Banga could not have met JFKU's standards even with his requested quiet room. As the moving party, defendants bear the burden of demonstrating the lack of a genuine dispute of material fact.

A genuine dispute remains as to whether Banga requested a quiet, private room in order to accommodate his disabilities. His March 8, 2016 email evinces he certainly requested a left-side room, at least for his final exams, although not necessarily that he made the request as a disability accommodation. But Banga's declaration states he made his rationale clear as early as November, and repeated it several times to his proctors—a fact that is not "blatantly contradicted," *Scott*, 550 U.S. at 380, by the record. Alfaro's contention that she proctored all Banga's exams, and would thus know about a request had it been made, is subject to question in light of Banga's May 10, 2016 email to her about his exam software crashing in the middle of his Torts final, a subject on which he would not have been prompted to send her an email if she had been proctoring the exam. At summary judgment, these questions must be resolved in favor of the non-moving party.

A genuine dispute also exists as to whether Banga's request was reasonable. Defendants contend Banga only *preferred* a left-side room—not that he *needed* one to accommodate his disabilities—and having to accommodate a preference is per se unreasonable. But "reasonableness is not a constant." *Zukle*, 166 F.3d at 1048 (internal alteration and citation omitted). "[W]hat is reasonable in a particular situation may not be reasonable in a different situation—even if the situational differences are relatively slight." *Id.* Banga's request, even if it was merely a

ORDER
CASE NO. 16-cv-04270-RS

8

preference, may have been reasonable in light of the number of available OAS rooms, their varying proximity to bathrooms and other common areas, whether Banga had registered his complaints during his midterms, and other facts. A trier of fact must be allowed to evaluate the totality of the circumstances.

Finally, a genuine dispute remains as to whether Banga could have met JFKU's standards with his requested accommodation. Banga has produced evidence that he passed his credit/no-credit classes, as well as several letter-graded undergraduate classes. Defendants would hold him to a higher burden; they fault him for not producing evidence that he passed a *letter-graded law school* class. However, such evidence would be impossible to produce; Torts and Contracts are the only letter-graded classes Banga took. Requiring such proof would also put schools in the unfair position of being able to deny students their requested accommodations, causing them to fail, and then defeat their ADA claims by faulting them for not passing. To require such evidence would be to eviscerate the ADA's protections. The evidence Banga produced satisfies his burden.

As to the other *Zukle* factors, the parties seem to agree Banga is disabled and JFKU is a public entity which receives federal financial assistance. They also agree that defendants took adverse action against Banga by disqualifying him. Defendants contend this adverse action was not *because of* Banga's disability: it was, they say, because of his academic performance. The crux of Banga's claim, however, is that his poor academic performance was a direct consequence of defendants' failure to accommodate his disability. Put differently, Banga's claim is that, *but for* his disability, he would have performed better on his exams, and thus adverse action, i.e. disqualification, would not have been taken. Neither party contends that Banga was disqualified for any other reason besides his GPA. As he has raised a genuine dispute as to whether he was qualified, he has also necessarily raised a genuine dispute as to whether his disqualification was because of his disability. Therefore, summary judgment on Banga's ADA and Rehabilitation Act claims is inappropriate. Furthermore, given his Unruh Act and unfair business practice claims are derivative of his ADA claims, summary judgment cannot be granted on those either.

**B. Retaliation**

Banga also alleges defendants retaliated against him by threatening to escort him from the premises when he attempted to hand deliver his disability complaint to Bean.[3] Section 12203(b) of the ADA prohibits retaliatory threats against an individual for exercising his rights under the Act. To state a claim for retaliation under the ADA, a plaintiff must allege "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (internal citation and quotations omitted*); see also Cornette v. Donahoe*, 472 F. App'x 482, 483 (9th Cir. 2012) (applying the same rules for a retaliation claim brought under the Rehabilitation Act).

The parties do not disagree that, in delivering an ADA complaint, Banga was engaging in protected activity. Nor do they disagree that there exists a causal link between this protected activity and Banga being asked to leave Bean's office. However, defendants argue that being asked to leave is not "adverse action." To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; "petty slights or minor annoyances" cannot qualify. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006). Banga does not allege he suffered any adverse action besides being asked to leave Bean's office by her staff. Neither does he allege any force was used; the parties seem to agree that while the staff threatened to call campus security, they did not actually do so. Merely being requested to leave a private office without the use of force is unlikely to dissuade the reasonable person from filing an ADA lawsuit. In fact, Banga was not dissuaded: he filed his ADA complaint two days later. There therefore exists no genuine dispute of material fact: Banga was not subjected to adverse action. As a matter of law, Banga was not retaliated against.

**C. Breach of Contract**

Banga's final claims are for breach of contract. He advances two theories: JFKU failed to refund his summer tuition after disqualifying him, and Barbieri failed to cause an investigation

---

[3] Banga's other retaliation theories have been dismissed. *See* ECF No. 118.

ORDER
CASE NO. 16-cv-04270-RS
10

into Kainos after Banga accused Kainos of discrimination, as provided for in the student handbook. To state a claim for breach of contract, a plaintiff must allege, the "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008). In California, the basic legal relationship between a student and a private university is generally characterized as contractual in nature. *See Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (Cal. Ct. App. 1972). At the same time, courts have recognized contract law will not be strictly applied in every situation. *See Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 824 (Cal. Ct. App. 2007). Courts often take a flexible approach with respect to a university's academic or disciplinary decisions, while applying contract theory with respect to a "specific promise" regarding fees charged or educational services provided. *Id.* at 826.

There exists a genuine dispute as to whether JFKU failed to refund Banga's summer 2016 tuition. JFKU's policies, as well as their letters to Banga, make a specific promise that his tuition would be refunded upon disqualification. That is, they form a contract with that term. JFKU has provided documentation of its *intent* to refund Banga's tuition to the Department of Education—he had received federal loans—within 30 days of his disqualification. However, there is no evidence in the record JFKU followed through on this intent. If defendants possessed evidence of the refund, such as a copy of the check, or correspondence with the Department of Education, they presumably would have produced it. They have in fact produced other checks. Meanwhile, Banga contends in his declaration he never received the refund. While the loan documentation he provides is not helpful to resolving this question, his declaration combined with the lack of documentation of the refund is enough to create a genuine dispute as to whether he was refunded.

However, there does not exist any genuine dispute as to whether Barbieri properly investigated Kainos. First, it is not clear that a contract between Banga and JFKU even existed. The catalog which Banga insists formed a contract explicitly disclaims that it is "neither a contract nor an offer to contract." Furthermore, unlike with his tuition refund, Banga cannot point to any "specific promise" which JFKU made to him. JFKU's academic and disciplinary decisions should

not, under California law, be governed by contract theory. *See Kashmiri*, 156 Cal. App. 4th at 826. Even if the catalog created a contract, it is not clear JFKU breached it. The catalog provides that "the Dean will promptly investigate [discrimination allegations] in accordance with University policy or regulations and, *if warranted*, refer the matter to the appropriate University entity for resolution. *If the University determines that bias has been established*, the student may petition the [Academic Standards] Committee." This is precisely what Barbieri did: He investigated the allegations in Banga's grade change petition and determined that it did not establish bias. Banga's petition did not detail his allegations of bias, let alone explain how Kainos could have discriminated against Banga despite the anonymous grading policy. Nevertheless, Barbieri referred Banga's petition to the Committee, from which Kainos recused himself. The Committee, sans Kainos, reviewed the petition and determined Kainos's grade had not been biased. Summary judgment on this theory is thus warranted. Therefore, the contract claim is limited to the refund question.

### D. Administrative Motions

Banga has moved to seal several exhibits to defendants' summary judgment motion, as well as exhibits to his own response. These exhibits include his application for disability accommodations, his doctor's letter in support of that application, his Accommodation Letter granting the application, another student's letter, his JFKU application (which refers to his disabilities), and his student loan balance. Except for the student loan balance, all these exhibits were previously sealed by this Court. *See* ECF No. 118. Each exhibit also contains the type of medical, financial, or personal information "traditionally kept secret." *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The motions to seal are therefore granted.

Banga has also moved for sanctions, including the exclusion of defendants' exhibits. This motion presents two bases, neither of which warrant sanctions. First, Banga accuses defendants of fabricating evidence. However, all the "fabricated" evidence seems simply to be evidence he would weigh differently—that is, evidence which creates genuine disputes of material fact. For example, Banga accuses defendants of fabricating a letter which stated Banga would receive a

summer 2016 tuition refund, because Banga says he did not actually receive a refund. However, it can both be true that defendants sent that letter, intending to refund Banga, and that they did not actually do so. Second, Banga accuses defense counsel of abusing the discovery process. Having reviewed the deposition transcripts, it appears that defense counsel did not break any clearly defined rules.

## V.  CONCLUSION

For the reasons set forth above, the motion for summary judgment is granted in part and denied in part. In particular, summary judgment is granted for defendants on Banga's retaliation claim and on his breach of contract claim, to the extent the latter is premised on Barbieri's failure to investigate Kainos. It is denied on the remainder of his breach of contract claim, as well as on each of his disability discrimination claims and his unfair business practices claim. Furthermore, Banga's motions to seal are granted. His motion for sanctions is denied.

**IT IS SO ORDERED**.

Dated: March 27, 2020

RICHARD SEEBORG
United States District Judge