UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVJEET SINGH BANGA,<br>　　　　　　　Plaintiff,<br>　　v.<br>CHRIS GUS KANIOS, et al.,<br>　　　　　　　Defendants. | Case No. 16-cv-04270-RS<br><br>**ORDER** |

**I. Introduction**

In litigation that has lasted nearly eight years, Plaintiff Navjeet Singh Banga asserts causes of action against Defendants John F. Kennedy University ("JFKU"), National University, Chris Gus Kanios, Dean Barbieri, and Eleanor Armstrong relating to his dismissal from his now-defunct former law school. Banga's surviving claims are for disability discrimination in violation of section 504 of the Rehabilitation Act and Title III of the Americans with Disability Act ("ADA"), derivative claims for violations of California's Unruh Civil Rights Act ("Unruh Act") and Unfair Competition Law ("UCL"), and breach of contract. A bench trial was held on February 26 and February 27, 2024. Banga elected not to call any witnesses, besides himself, during his case-in-chief. After Banga rested his case, Defendants moved for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). A decision on this motion was deferred, and Defendants presented several witnesses during their case-in-chief.

This Opinion and Order proceeds in two parts. First, it resolves Defendants' Rule 52(c) motion, finding judgment on partial findings in favor of Defendants is warranted for the claims

that remain live.[1] Second, it holds that even were judgment on partial findings inappropriate, Banga's claims would fail in light of all the evidence presented at trial. This Order comprises the findings of fact and conclusions of law required by Rule 52(a).[2] It is based on the evidence and argument presented at trial.

## II. Parties

Plaintiff Navjeet Banga is a former law student at JFKU. Defendants are JFKU, National University (JFKU's alleged parent institution), Chris Gus Kanios (Banga's Torts professor), Dean Barbieri (JFKU's Dean), Eleanor Armstrong (Director of JFKU's Office of Accessibility Services), and Debra Bean (JFKU's President).

## III. Background

### A. Factual Background

Banga, prior to enrolling at JFKU, completed an undergraduate degree in sociology at the University of California, Davis. Banga then pursued, but did not complete, a master's degree in education at the University of Southern California. Banga enrolled as a part-time law student at JFKU in fall 2015 and took two letter-graded courses (Contracts and Torts) while a student. Both were year-long courses graded on the basis of a midterm examination administered in December and a final examination administered in May. Banga also enrolled in courses graded on a credit/no credit basis. During the fall 2015 semester, Banga requested disability accommodations based on his major depressive disorder and social anxiety disorder. *See* Trial Ex. 130. JFKU formally granted Banga several accommodations, including double time for exams, permission to stand up and walk around during exams, priority registration, and multimedia textbooks. Banga was also allowed to take his tests in a private room in JFKU's Office of Accessibility Services ("OAS").

---

[1] Banga's ADA claim is moot and will be dismissed on that basis.

[2] To the extent any conclusions of law are inadvertently labeled as findings of fact (or vice versa), the findings and conclusions shall be considered "in [their] true light, regardless of the label that the . . . court may have placed on [them]." *Tri–Tron Int'l v. Velto*, 525 F.2d 432, 435–36 (9th Cir. 1975).

Banga failed both of the midterms for which he sat in December 2015, receiving a grade of 60 on his Torts midterm and a grade of 61 on his Contracts midterm. At the end of the following spring semester, Banga failed his Torts and Contracts finals, receiving a 65 on his Torts final and a 63 on his Contracts final. JFKU required that its students maintain a cumulative grade point average of 70 or better to avoid potential disqualification from the law school. Banga finished his first year of law school with a cumulative GPA of 63. Around this time, Banga complained to JFKU administrators, including Barbieri, that his failing grades were at least partially due to his having received insufficient accommodations. Banga contended his testing room had been distractingly noisy and he had been unable to concentrate on his tests. On June 13, 2016, JFKU notified Banga in writing that he had not received passing grades during his first year of law school and was subject to academic disqualification for not maintaining the required cumulative grade point average. The letter noted Banga could attempt to avoid disqualification by filing a Petition to Advance on Probation; Banga filed his petition on June 24, 2016. JFKU's Academic Standards Committee denied Banga's petition to advance on June 30, 2016. Less than two weeks later, Banga filed a Petition for Grade Change alleging his Torts grade (in Kanios's class) was the product of various forms of discrimination. The Academic Standards Committee (except Kanios, who recused himself) considered and denied Banga's grade change petition in the beginning of August on the grounds that because all grading at JFKU was anonymous, the discrimination Banga alleged was impossible. JFKU forced Banga to withdraw from the summer law courses in which he was enrolled.

**B. Procedural Background**

Banga filed his initial complaint *pro se* in July 2016 alleging, among other things, that Defendants discriminated against him on the basis of disability. Banga amended his complaint which was then dismissed in December 2016. Upon the filing of Banga's second amended complaint in February 2017, Defendants moved to dismiss, to which Banga filed an untimely response (which, as noted at the time, was not his first failure to observe Court deadlines). This second amended complaint was dismissed with leave to amend. Banga was referred to the Federal

Pro Bono Project in May 2017, and the case was stayed for two months while Banga sought representation. Banga was unable to obtain counsel at this juncture, but nevertheless filed his Third Amended Complaint in July 2017. Several of Banga's claims survived Defendants' motion to dismiss, while others were dismissed without leave to amend.

Banga was once again referred to the Federal Pro Bono Project in June 2018; this time, he was able to secure representation and counsel were formally appointed in August. Unfortunately, this newly retained counsel moved to withdraw two months later. In October 2019, Banga was referred to the Federal Pro Bono Project (and settlement proceedings were stayed) for a third time in order to give Banga an opportunity to secure representation for settlement purposes. After six months of fruitless attempts to identify counsel, the stay was lifted. Though trial was originally scheduled to occur in June 2021, the trial date was continued several times at the request of both parties. *See, e.g.*, Dkt. 441 (continuing trial scheduled for February 2022 by 90 days after Banga requested additional time to secure counsel); Dkt. 508 (continuing trial date to give Banga final opportunity to obtain representation).

A bench trial was finally held at the end of February 2024. Banga, still proceeding *pro se*, was permitted to submit a written statement to which he attested under oath in Court in lieu of live direct examination. He was then cross-examined by counsel for Defendants. When asked whether he had additional witnesses to present (or evidence to admit) after the end of his testimony, Banga stated that he did not. Defendants moved for judgment on partial findings pursuant to Rule 52(c), and after some delay, Banga indicated he had a number of exhibits he wished to move into evidence and was permitted to re-open his case-in-chief for the purpose of seeking to admit these exhibits.[3] Once Banga again rested, Defendants called (1) Dean Barbieri, JFKU's former Dean, (2) Debra Bean, JFKU's former President, (3) Chris Gus Kanios, Banga's former Torts professor, and (4) Banga. Defendants concluded the trial with an oral closing statement, and Banga was

---

[3] Banga sought to admit 26 exhibits in total (Exhibits marked 126 through 151) at trial. The Court deferred ruling on the admissibility of these exhibits so that Defendants would have an opportunity to examine them and make any objections.

1   permitted to submit a written version of his closing arguments.

## IV. Summary of Evidence[4]

### A. Banga's Case-in-Chief

Banga's case consisted of his written testimony, facts elicited during his cross-examination by Defendants' counsel, and Trial Exhibits 126 through 151. Banga did not present any additional witnesses. Banga testified he was assured, before enrolling at JFKU, that the school had ADA-compliant accommodation practices. He applied for disability accommodations in October 2015 with the OAS and was granted double time on examinations and other accommodations. Banga's accommodation letter did not provide for him being able to take his examinations in a reduced-distraction area. He reached out to an administrator, Doreen Alfaro, in an attempt to ensure he would receive a distraction-free testing environment. Alfaro allegedly informed Banga he did not need to submit further documentation, that all examinations at JFKU took place in distraction-free environments, and that a distraction-free room would be provided. Banga was not given the specific private room he requested for his midterms but did receive a different private testing room. Banga testified he complained, during the tests, to Alfaro that he was distracted. Banga did not receive a passing score on either midterm.

In the spring, Banga again requested, but did not receive, the specific private room within which he wanted to take his examinations. The room in which Banga took his midterm and final examinations for Contracts and Torts was within the OAS and had a door and a desk. But for the

---

[4] There are several disputes between the parties regarding the admissibility of various portions of Banga's written testimony and the exhibits Banga sought to admit at the close of his case-in-chief that remain outstanding. The universe of potentially admissible exhibits (Trial Exhibits 126 through 151) consists of those exhibits Banga sought to enter into evidence at trial. As explained in further detail below, resolution of these disputes is unnecessary because even assuming Banga's testimony and these exhibits are admissible in their entirety, Defendants prevail on each cause of action. Banga, after trial, sought the admission of additional exhibits marked as Trial Exhibits 155 to 161. These exhibits were not admitted during Banga's case-in-chief, Banga acknowledges they are "new," and their admission after the conclusion of trial would be inappropriate. Dkt. 579, at 2. These exhibits will not be considered in evaluating Defendants' Rule 52(c) motion or otherwise. Moreover, a review of these proposed exhibits demonstrates that even were they to be considered, they would not merit different conclusions than those reached in this Order.

occasional visit by a proctor, Banga was alone in the room during the six hours (double time) he was given for his tests. Banga testified he complained to Alfaro during his tests that he found the room he was in distracting and requested a different room but that his requests were denied. He failed both final examinations.

### B. Defendants' Case-in-Chief

First, Dean Barbieri testified about JFKU's academic standards, Banga's academic performance and requested accommodations, and Banga's eventual academic dismissal. He explained how Banga did not receiving passing marks on his midterms or finals in Contracts and Torts. He further testified that because Banga was given a private room in which to take his tests, he would be shielded from disruptions common to group test-taking in a single classroom such as students leaving to use the bathroom or finishing their tests early. Second, Debra Bean testified about her role as President of the law school, JFKU's minimum grade requirements, and the extent to which she interacted with Banga while he was a student. Third, Chris Kanios testified about Banga's performance in his Torts class and the process by which students were evaluated.[5] Kanios noted Banga did not receive credit for Legal Writing, which was one of Banga's credit/no credit courses. Finally, Defendants called Banga as a witness and asked him questions about the accommodations he requested and subsequently received while a student.

### V. Motion for Judgment on Partial Findings

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 52(c),

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

---

[5] Banga objected to Kanios being called to testify on the second day of trial on the grounds he was not informed of this possibility. Defense counsel, however, indicated at the close of the first day of trial that he needed "to confirm whether Mr. Kanios is also available tomorrow." Trial Tr. at 128 (Feb. 26, 2024). Banga was clearly on notice the trial was moving quickly and Kanios might testify the next day.

A district court is not obligated to draw inferences in favor of the non-moving party on a Rule 52(c) motion, but rather "may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006).

**B. Discussion**

The evidence Banga presented during his case-in-chief in support of his claims of disability discrimination, violation of the Unruh Act and the UCL, and breach of contract consisted of his testimony on direct and cross examination and 26 trial exhibits. Judgment in favor of Defendants is appropriate for Banga's Rehabilitation Act claim, Unruh Act and UCL claims, and breach of contract claim. Banga's ADA claim is moot and, therefore, is subject to dismissal.

**1. Disability discrimination**

**i. Rehabilitation Act**

In order to prevail on a claim under section 504 of the Rehabilitation Act, Banga had to show (1) he was disabled within the meaning of the Act, (2) he was "otherwise qualified" to remain a student at JFKU, (3) he was dismissed from JFKU because of his disability, and (4) JFKU receives federal financial assistance.[6] *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999). A disabled person is otherwise qualified to participate in a program if he shows he can meet the program's necessary requirements with or without reasonable accommodation. *Id.* at 1046 (internal citation omitted); 34 C.F.R. § 104.3(*l*)(3) (defining "otherwise qualified" to mean capable of "meet[ing] the academic and technical standards requisite to admission or participation" in the relevant activity). "A failure to provide reasonable accommodation can constitute discrimination under section 504." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). Plaintiffs, thus, must show they were denied a reasonable accommodation that would have enabled them to meet the relevant academic eligibility

---

[6] This Order assumes, without deciding, that Banga met his burden to establish he was disabled and that JFKU received federal funds. It is worth noting, however, that a court's finding that a genuine dispute exists at the summary judgment stage does not mean a party will *prevail* on that issue at trial.

ORDER
CASE NO. 16-cv-04270-RS

7

requirements to prevail on a section 504 claim based on such a theory. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

Banga did not show he was otherwise qualified to meet JFKU's academic requirements even when afforded reasonable accommodation.[7] For instance, Banga testified he was enrolled in non-letter-graded courses at JFKU but offered next to no information about his performance in those classes. *Cf. Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 823–24 (9th Cir. 1999) (finding plaintiff's evidence he "received satisfactory grades and generally positive comments from his evaluators" relevant to whether he could "meet the University's eligibility requirements"). Those non-letter-graded courses were presumably assessed by means other than timed examinations like Banga took in Contracts and Torts. Such evidence of success in his other courses, had it been presented, might have supported Banga's contention that, outside the context of an allegedly distracting test-taking environment, he could succeed academically at JFKU.[8] Banga also did not show his requested accommodation (a *specific* private room) was a reasonable one. *See Zukle*, 166 F.3d at 1048 (noting fact-specific nature of "reasonableness" inquiry). Though Banga testified the room he received was next to a reception area, he provided no factual basis upon which to conclude that the provision of a specifically requested private testing room constituted a reasonable accommodation. Banga acknowledged there were only four private rooms in the OAS but offered no evidence regarding, for instance, how many students those rooms needed to accommodate, whether other students were permitted to request specific testing rooms, or whether some testing rooms were more or less distracting than others.

Similarly, Banga did not show Defendants failed to provide him with reasonable

---

[7] Banga claims it was "already determined [he] presented sufficient evidence to demonstrate he could have met JFKU's academic requirements with his requested accommodation" at the summary judgment stage. Dkt. 583, at 25. For the reasons explained above, this is not so.

[8] Though, at summary judgment, there was a genuine dispute regarding whether Banga had passed several credit/no credit courses, Banga did not present any persuasive evidence during his case-in-chief about his performance in these classes.

accommodation such that he was dismissed because of his disability. Banga testified he was given a private room for his midterm and final examinations. He also testified the room he received was too noisy and he would have been able to "properly focus on the exam" were he given a sufficiently quiet room. Dkt. 572-2, at 2. This was so, Banga claimed, because the room he was provided (Room S313A) was "adjacent to the waiting area and receptionist desk," which was a "high traffic area" and that the "receptionist was answering [the] phone [and] greeting students" while other students were "chatting amongst themselves or talking to the receptionist" from the sofa. *See* Dkt. 572-2, at 3. The crux of Banga's claim is that he was not given the *specific* testing room he wanted. Critically, Banga did not present evidence, aside from his own conclusory statements, that the area adjacent to the room he received was noisy, that, if it was, any noise was audible within Room S313A, or, if noise was audible, how often noise disruptions occurred. Banga did not call any witnesses who used the private rooms in OAS and who therefore might have been able to testify about their relative noise levels. Nor did he seek to call Alfaro to testify about noise levels in the OAS or Banga's alleged noise complaints. "[S]elf-serving allegations," without more, are an insufficient basis for a Rehabilitation Act claim. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1078 (8th Cir. 2006) (citation omitted).

  The evidence Banga *did* present at trial, furthermore, undermines his claim that he was not reasonably accommodated by Defendants. For instance, the accommodation letter Banga eventually received (and signed) from the OAS made no mention of any request for, or any promise to provide, a private testing room. *See* Trial Ex. 132, at 1. Banga was nevertheless given a private room within which he could take his tests. The second page of Banga's accommodation letter also spelled out the process that students who were denied accommodations, or who believed their accommodations were insufficient, should follow. *See id.* at 2 (explaining the student "may appeal to the Disability Services Committee, who will render a decision within seven (7) days of receipt of the appeal or prior to the start date of the next course, depending on which occurs first"). Banga did not present evidence that he filed any such appeal or took any steps after his midterm examinations to seek relief for the distracting conditions he later claimed to have endured. Nor did

Banga provide evidence that he requested a distraction-free private room during the formal accommodation-seeking process or presented JFKU with a doctor's recommendation that he needed a private testing room. As to the latter failure, Banga's evidence showed the opposite. *See* Trial Ex. 130 (doctor's note recommending only "extended test time"). Banga merely testified he asked Alfaro for a private room—which he then received—after going through the accommodations process and getting his accommodation letter. Therefore, to the extent Banga seeks to premise his failure-to-accommodate claim on a theory that Defendants failed to engage in the interactive process, that theory is flatly contradicted by the evidentiary showing he made at trial.

Banga failed to present sufficient evidence that he was otherwise qualified and/or not reasonably accommodated to prevail on his Rehabilitation Act claim. Moreover, the evidence Banga *did* provide about the actions he took (and did not take) demonstrates he was reasonably accommodated. Accordingly, judgment in favor of Defendants on their Rule 52(c) motion is appropriate with respect to this cause of action.

### ii. Americans with Disabilities Act (ADA)

A litigant bringing a claim pursuant to Title III of the ADA must establish "(1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle*, 166 F.3d at 1045 n.11. Discrimination on the basis of disability under Title III occurs where an educational institution fails to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such . . . accommodations to individuals with disabilities" unless the institution can show the "modifications would fundamentally alter the nature" of the accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii). Title III does not allow individuals to recover damages; rather, "[t]he enforcement provisions of Title III provide only for injunctive relief."

*Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002). A plaintiff must "demonstrate a real and immediate threat of repeated injury in the future" in order to warrant injunctive relief. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (cleaned up).

  Banga is no longer a student at JFKU; indeed, Defendants represent that "JFKU is no longer functioning as a law school." Dkt. 581, at 12. While Banga initially sought relief in the form of JFKU re-enrolling him as a law student, that relief—which Banga no longer appears to seek—is unavailable where the institution Banga attended approximately eight years ago no longer exists. Banga has not and could not demonstrate he faces a threat of future injury in the form of insufficient testing accommodations at JFKU in the future because JFKU no longer exists. Though Banga seeks punitive damages for his ADA claim, damages are not available in private Title III suits. To the extent Banga seeks declaratory relief against Defendants for past violations of the ADA, this would not constitute an "appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 868 (9th Cir. 2017) (holding "declaratory judgment merely adjudicating past violations of federal law" insufficient basis for jurisdiction). Thus, Banga's ADA claim is moot such that he does not have standing to maintain this claim. *See, e.g.*, *Bax v. Doctors Medical Ctr. of Modesto, Inc.*, No. 17-cv-01348-DAD-SAB, 2021 WL 3733113, at *30 (E.D. Cal. Aug. 24, 2021) (addressing mootness in ADA context). Banga's ADA claim is dismissed for lack of jurisdiction.

  It is worth noting that even were Banga's ADA claim somehow not moot, he still failed to present evidence sufficient to demonstrate any of the Defendants denied him accommodations because of his disability. Banga testified he was afforded double time for examinations and a private room for testing. As explained above, Banga offered essentially no evidence beyond self-serving, conclusory statements that the private room he received was too noisy such that it constituted a denial of accommodations. Nor did Banga demonstrate he was "otherwise qualified" for purposes of his ADA claim such that he was able to meet JFKU's standards with reasonable accommodations. *See Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 964 n.3 (N.D. Cal. 2013)

(reading "otherwise qualified" requirement into disability discrimination analysis for Title III claims given that accommodations need not be provided where they would "fundamentally alter" the relevant program); *see* 42 U.S.C. § 12182(b)(2)(A)(ii) (relevant statutory provision); *Mershon*, 442 F.3d at 1076 (finding the "otherwise qualified" idea implicit in Title III).

### ii.   Unfair Competition Law & Unruh Civil Rights Act

The parties agree Banga's UCL and Unruh Act claims are derivative of his disability discrimination claims. "When a statutory claim fails, a derivative UCL claim also fails." *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012).[9] Similarly, Banga's Unruh Act claim is premised on his ADA claim, which is moot and, even if viable, would fail on its merits.[10] An Unruh Act cause of action may proceed even where an underlying ADA claim is moot because an Unruh Act cause of action looks to past harm. *See Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 911 (N.D. Cal. 2019). Since, however, the ADA claim upon which Banga's Unruh Act claim is premised fails on its merits for the reasons discussed above, his Unruh Act claim fails as well. Specifically, like for his Rehabilitation Act claim, Banga did not show JFKU failed to provide him reasonable accommodation or that he was otherwise qualified to meet

---

[9] Though a UCL claim may be brought as a standalone cause of action, Banga did not present evidence or otherwise pursue a theory that Defendants engaged in unfair or fraudulent business practices that could support such a standalone claim. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1135–37 (N.D. Cal. 2010). Defendants do not specifically argue the Court lacks equitable jurisdiction over Banga's UCL claim because of the existence of an adequate remedy at law and did not raise such an argument before trial. *See Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 500–01 (1923) (defendant's failure to "object seasonably" to lack of equitable jurisdiction constitutes waiver of argument); *see also Turrey v. Vervent, Inc.*, No. 20-cv-697-DMS-AHG, 2023 WL 6390620, at *5 (S.D. Cal. Sept. 29, 2023) (objection raised on eve of trial was timely). Instead, Defendants contend Banga cannot secure equitable restitution under the UCL because he has not shown he lacks an adequate remedy at law. *See Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020). Banga's UCL claim fails for independent reasons such that this argument need not be addressed.

[10] An Unruh Act claim may be brought absent any underlying ADA violation, but doing so requires a showing of intentional discrimination. *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–65 (2009). Banga did not rest his Unruh Act claim on a theory of intentional discrimination or present evidence of intentional discrimination at trial. *See Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 911 n.2 (N.D. Cal. 2019) (declining to consider such a theory when not raised by plaintiff). Instead, the evidence established Banga received more accommodations than he was entitled to under his accommodation letter.

JFKU's academic standards.

### iii. Breach of Contract

Under California law, prevailing on a breach of contract claim requires proof that "a contract was formed[,] that the plaintiff did everything required by the contract[,] that the defendant did not do something required by the contract[,] and that the plaintiff was harmed as a result." *CSAA Ins. Exch. v. Hodroj*, 72 Cal. App. 5th 272, 276 (2021); *see also Walsh v. West Vally Mission Comm. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998) (similar). "The plaintiff in a breach of contract action has the burden of proving nonspeculative damages with reasonable certainty." *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 29 Cal. App. 5th 1, 11 (2018). In California, "the basic legal relation between a student and a private university or college is contractual in nature." *See Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972).

Banga submitted evidence that JFKU told him it would refund any tuition he paid for summer law classes in 2016. *See* Trial Ex. 144. He also testified he enrolled in summer classes during the summer 2016 term at JFKU. Banga presented no persuasive evidence demonstrating that JFKU failed to refund, either to him or to the Department of Education, any fees that went towards Banga's summer tuition.[11] For instance, Banga did not present records demonstrating the amount of summer tuition fees JFKU charged his account or that JFKU failed to refund those fees. The loan documentation Banga submits does not resolve whether JFKU refunded any summer tuition fees. He therefore has not shown JFKU (or, for that matter, any of the other Defendants) did not do something required by contract or proven his claimed damages by a preponderance of the evidence.

### C. Evidentiary Deficiencies

Banga cites *Waters v. Young* in suggesting that if his evidentiary showing at the time Defendants made their Rule 52(c) motion was lacking, the Court was obligated to provide him

---

[11] Banga was repeatedly instructed that, as the Plaintiff, he had the initial burden to provide evidence to support his claims.

with an additional opportunity to cure any evidentiary deficiencies. *See* 100 F.3d 1437, 1442 (9th Cir. 1996). *Waters* concerns motions brought pursuant to Rule 50(a), and Rule 50 "applies only to issues tried by a jury." *Granite St. Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1030–31 (9th Cir. 1996). "Rules 50(a) and 52(c) . . . assign very different functions to the district judge" because while, in a jury trial, the jury is the trier of fact, the judge is the trier of fact in a bench trial. *Ritchie v. United States*, 451 F.3d 1019, 1022–23 (9th Cir. 2006). In the Rule 52(c) context, judgment on partial findings is appropriate only when a party has been "fully heard" on an issue. Fed. R. Civ. P. 52(c).

Banga was fully heard on each of his claims and given the opportunity to enter additional evidence into the record. At the pre-trial conference, Banga was reminded he, as the Plaintiff, had the burden and was expected to present evidence. Banga requested—and received—permission to submit written direct examination testimony rather than present that testimony orally. After Banga finished testifying during his case-in-chief, he was asked whether he had "any further witnesses to call." Trial Tr. at 39 (Feb. 26, 2024) ("2/26 Trial Tr."). He replied that he did not. Banga, when asked if he was resting his case, said he was resting it "[f]or today." *Id.* Banga was instructed he could not simply rest his case for the day and reopen it later because it was his case to present, and he was the party responsible for presenting evidence first. *Id.* at 43. During the subsequent recess, Defendants filed their Rule 52(c) motion. Here, Defendants' motion would have apprised Banga of all the evidentiary grounds upon which Defendants were seeking judgment. *See Reed v. Lieurance*, 863 F.3d 1196, 1210 (9th Cir. 2017) (reading *Waters* to require court to apprise non-moving party of evidentiary deficiencies where Rule 50 motion itself does not do so).[12] Upon returning from the recess, Banga expressed a desire to reopen his case for the purpose of admitting 26 exhibits as part of his case, and he was granted permission. In sum, Banga was advised of the

---

[12] In the Rule 50 context, the purpose of alerting the non-moving party of deficiencies in their proof relating to a "dispositive fact" is so it can cure such deficiencies while that possibility exists. *See Waters*, 100 F.3d at 1441 (citing *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1429 (9th Cir. 1986)). *Waters* explains that for Rule 50 motions, "the motion itself will ordinarily inform the non-moving party of the deficiencies in its proof." *Id.*

consequences of resting his case and was then given the opportunity to add additional evidence to the record upon further reflection and the knowledge Defendants had filed a Rule 52(c) motion. Banga was fully heard within the meaning of Rule 52(c).

**D. Conclusion**

Dismissal of Banga's ADA claim is appropriate because that claim is moot. Banga failed to meet his burden of proof on any of his other causes of action, and judgment on partial findings for those claims is appropriate.

## VI. Findings and Conclusions After Trial

Alternatively, Defendants would also be entitled to judgment on Banga's claims (with the exception of the ADA claim, which is moot and will be dismissed) when considering *all* of the evidence presented at trial, including evidence elicited during Banga's cross-examinations of Defendants' witnesses. In their case-in-chief, Defendants elicited testimony that Banga never formally requested a distraction-free testing requirement as an accommodation and that Banga's doctor's note did not say anything about the need for such an accommodation. Defendants also provided evidence Banga was not meeting minimum law school requirements even outside the context of allegedly distracting test-taking environments. For instance, Kanios testified about how Banga did not receive a passing grade in his year-long Legal Research and Writing class despite the fact that the class used written research assignments, rather than timed examinations, to evaluate students.

**A. Disability Discrimination Causes of Action**

Banga's disability discrimination claims fare even worse when considering the testimony of Defendants' witnesses. Banga had to show he was "otherwise qualified" to remain a student at JFKU such that he was capable of meeting the law school's requirements with reasonable accommodations to succeed on his Rehabilitation Act or ADA claims.[13] *See, e.g.*, *Zukle*, 166 F.3d at 1047. While Banga presented little evidence of his ability to meet JFKU's requirements,

---

[13] Though the ADA claim is moot, this alternative analysis again deals with it on the merits.

Defendants' witnesses testified that Banga was not passing his courses even when those courses did not have timed tests. Kanios, Banga's Torts professor, explained that Banga received a no-credit grade in JFKU's year-long Legal Research and Writing course, something that "does not occur often."[14] Trial Tr. at 191 (Feb. 27, 2024). The core of Banga's disability discrimination argument is that, but for Defendants' refusal to give him a sufficiently private, quiet room for tests, he would have been able to succeed at JFKU. Banga's no-credit grade in Legal Research and Writing undermines this argument because it demonstrates that even when Banga had unbounded time to complete his coursework and to do so in non-distracting environments, he was unable to meet JFKU's academic standards.

Further, Defendants presented evidence that Banga received the reasonable accommodation he requested. *See A.G.*, 815 F.3d at 1206. When Defendants called Banga as a witness, he acknowledged that neither his application for accommodations nor his doctor's note referenced any need for a private testing room. *See* Trial Ex. 6. Banga, nevertheless, received a private room in which to take his tests for both his graded midterm and final examinations. This room was one of four private rooms in the OAS available to JFKU students who needed accommodations. No evidence elicited during Defendants' case—besides Banga's own statements—tended to show that any of the OAS's four private rooms were noisy, or that some rooms were noisier than others. Instead, Barbieri testified that the private room Banga received was far less distracting than the classroom where students without accommodations took tests. *See* 2/26 Trial. Tr. at 90 ("Instead of having 25 people in a room, people getting up, going to the bathroom, people finishing early, turning in their papers, instead of all that commotion in a regular testing room, this was a room where he was able to shut the door and not have interruption."). When Defendants called Banga as a witness, he agreed the email he sent Alfaro immediately after

---

[14] Kanios explained that, for such a course, determining whether a student would receive credit or no credit for the course came down to whether a student "submit[ed] work that is at a satisfactory level" or "[did] not submit work." Trial Tr. at 189–90 (Feb. 27, 2024). Banga elected not to cross-examine Kanios.

taking one of his finals made no mention of noisy conditions, but instead blamed the "anxiety and panic" he felt during the test on the fact his exam software had crashed. *See* Trial Ex. 30, at 1. Banga's initial decision to blame his exam performance on his exam software malfunction casts doubt on the credibility of his later claims that he struggled for a totally different reason.

The evidence demonstrated Banga received more accommodations than he formally requested and that he raised formal complaints about the quality of the private room he received only after failing his final exams at the end of the year and facing possible dismissal. *See* 2/26 Trial Tr. at 99 (Barbieri's testimony that, to his knowledge, Banga never "appealed his accommodation award."). Banga was dismissed from JFKU because he was unable to meet JFKU's academic standards even while JFKU provided him with the accommodations he sought.

### B. Unruh Act and UCL Violations

Banga's Unruh Act and UCL causes of action remain derivative of his disability discrimination claims. As Defendants would prevail on those discrimination claims after considering all the evidence presented as trial, his derivative claims would fall as well. This is so regardless of whether Banga's case-in-chief is reviewed in isolation for purposes of a Rule 52(c) analysis, or, in the alternative, all of the evidence presented at trial is weighed. Even had Banga brought his Unruh Act and UCL claims as standalone causes of action, Defendants would prevail on those claims as well given the evidence presented at trial.

### C. Breach of Contract

Finally, Defendants would prevail on Banga's breach-of-contract cause of action even when considering the additional evidence presented during Defendants' case-in-chief. Even when considering that additional (limited) evidence, Banga did not meet his burden to show, among other things, that one or more Defendants failed to do something required by contract and that Banga was harmed by this failure. *CSAA Ins. Exch.*, 72 Cal. App. 5th at 276. Barbieri, after being called by Defendants, acknowledged Banga was permitted to enroll in summer classes while he attempted to petition to remain a student despite his failing grades during his first year. Barbieri also testified during cross-examination that it was his understanding that JFKU had refunded

Banga's summer tuition. Though neither Barbieri nor the other Defendants presented documentary evidence that Banga's summer tuition was refunded, Banga had the initial burden on each of the elements of his breach of contract claim. Thus, the same conclusion reached for Defendants' Rule 52(c) motion would be warranted even were all the evidence presented at trial considered: Banga failed to provide sufficient evidence to prevail on his breach of contract claim.

## VII. Conclusion

Banga's ADA claim is dismissed as moot. Defendants prevail on each of Banga's other causes of action and are entitled to judgment on those causes of action. Accordingly, Banga is not entitled to damages.

**IT IS SO ORDERED**.

Dated: April 30, 2024

_____
RICHARD SEEBORG
Chief United States District Judge